Case number 11-3034 et al. United States of America v. William Cordova, also known as Mario, also known as Centelia. Appellant. Issue. Access to Jinx Act materials. Mr. Becker for the appellant, Ms. Bates for the appellee. Recusal. Mr. Martin for the appellant, Ms. Bates for the appellee. Discussion of jury instructions. Mr. Becker for the appellant, Ms. Bates for the appellee. Testimony in Spanish. Ms. Davis for the appellant, Ms. Bates for the appellee. Judge Cato, members of the panel, good morning. I'm Robert Becker and I represent Melvin Sordo. There are two important points to keep in mind at the outset. This case is about a trial protective order, not a pretrial protective order. And appellants are not asking for a right to keep copies of Jinx material in their cells. They are asking for a right to have meaningful access so they can assist their lawyers. Particularly in criminal cases, protective orders pose problems for lawyers working on to develop the case and investigate and significant burdens on the 5th and 6th amendments. For that reason, there are strict rules about procedure for issuing protective orders and putting them in place. Judge must make a record, must provide a clear statement of what the order covers. They must consider, balance the defendant's rights against the perceived concern, in this case the government's witness security concern. And they must determine that that order will in fact prevent the harm that the government is concerned about. Is our review of use of discretion on this issue? I believe this is constitutional trial error, Judge Wilkins, because it clearly directly implicates 5th and 6th amendment rights. What case do you have that this type of an order rises to the level of something that gets the Chapman v. California standard? The issue has mostly developed in civil cases. Seattle Times v. Reinhart, Cipollone v. Liggett group, where the court has applied constitutional analysis to the issuance of protective orders both in terms of the procedure and the requirements for good cause. But that's, you know, protective order that prevents the public from having access to something, you know, court materials. That's not this case. But the government cites Alderman. But in that case, the question was whether the defendant could be prohibited from disclosing to third parties information that he was entitled to see. And this directly implicates the defendant's trial rights. It doesn't deal with dissemination to third parties. The interest is much stronger in that situation where the defendant has a right to actively participate with his lawyer in mounting his defense. But in federal courts across the country, and in the D.C. Superior Court, which has the same Jinx Act and Jinx rules as the federal courts do, defense lawyers are often given Jinx materials right before the witness is testifying, and they're reviewing them with their client kind of at the defense counsel table or with just a few minutes. And so that's not seen as being a constitutional problem. It may, if the lawyer doesn't have enough time to review it for that lawyer, he or she may request more time. And depending upon how that's dealt with, that may be error of some sort. But how is it if the protective order here, the nature of it was simply that you can review it with, the defendants can review it, but they have to have counsel or an investigator present. How is that really meaningfully different than what happens in 90% of the cases anyway? I guess my first answer is that this is not a Jinx Act case. We are not claiming that the government didn't live up to its obligations under the Jinx Act. We are claiming that because of the volume, and in this case it was 1,000 pages at a time or more that the defense counsel got on Thursday for the next week's witnesses, that the defendant needed to have time to review that information. And in this situation, defense counsel, unlike prosecutors who have investigators internally, they have the police, they have paralegals, most defense counsel, particularly in indigent cases, have one investigator and themselves. And for them to have to sit at the jail for the entire time it takes for their client to review that information in that volume is an impossible burden. And the trial can't be put off for long periods of time each week when that happens. The court, I think, the judge said that they could have additional time if they needed it, and no one ever asked. Judge Tatel, I think everybody in this case was living under the burdens of this case, which was there was a large amount of evidence that was unloaded on counsel each week. Right. But still, the judge gave counsel an opportunity to ask for more time. But counsel, again, before trial, asked for the information further in advance so that they could investigate and adequately prepare after it came to light that Mr. Sordo had copies of the Janks material. Counsel for one of the co-defendants asked that their clients be given the material. I understand all that. I'm just asking you if the judge, you said the problem was this vast amount of material and they didn't have enough time. But since the judge gave counsel an opportunity to seek more time and they didn't ask for it. That's true, Judge Tatel. But at the same time, they were saying, we're having trouble with communicating with our clients about these witnesses. Where did they say that? Excuse me? Where did they say that? In the hearing after it came to light that Mr. Sordo had the transcripts. Yeah, the quotes that I had were that it would be more productive, move along faster, essentially convenient. They didn't sound in terms of impairment of the relationship or even ability to communicate between the client and the attorney in a functional manner. It would be faster, more convenient. So how do we factor that in? I think there was a subsequent discussion where the judge first prohibited defendants from taking anything out of the courtroom or bringing anything in. And then Cordova's lawyer said that's impossible because they need to be able to write down their thoughts and let us know what's going on. And the judge then relented slightly and allowed them to bring notes from the court, from the jail, but then refused to let them take anything away. That was a different issue. You all entered into an agreement on that issue, but I'm still getting to this objection, concern you're raising about the impairment of the Fifth and Sixth Amendment rights. The objections that were made did not sound in those terms at all. It very much sounded in terms of convenience, which is not to downplay the importance of that during a trial with a lot of pressures on. But your client didn't object at all. Only one person objected and did it in terms of it will be more productive, more convenient, move along faster, which doesn't sound like the impairment that you were talking about. So what do we do with that? Well, I think he did not cite the Fifth and Sixth Amendment in that argument, but the argument really sounded. Well, that's what I'm raising to you is actually, I'm not saying you have to use magic words and say Fifth and Sixth Amendment, but your argument here was that they weren't able to communicate effectively with their clients, but that wasn't what was said. If that had been said, you're right, that might have sounded enough in constitutional terms. But unless you know where it is, when I read the transcript, I did not see an inability to communicate effectively with clients or for them to participate in their defense. Well, I think that those are two sides of the same coin in the sense that, as I think I said in the brief, the defendants knew these cooperators. The lawyers did not. If the defendants were to read the Jenks material, they would be able to say he's lying or this happened this way, but they never got the opportunity because of the restrictions that were imposed, and restrictions that could have been alleviated greatly as they have in other RICO cases in this circuit. But again, no one told the district court you weren't having the opportunity. It was a question of would be faster, more productive, and then I haven't seen in your briefs here any argument about actual prejudice. You haven't identified something that would have been uncovered had you had more time, that you just didn't have time to find at trial. Am I right? I would suggest to you, Judge Millett, that proving prejudice in this situation would be impossible because the defendants didn't have the material. We don't know what they would have told their lawyers back then if they had been able to read it. Would you have plenty of time since then to say did you find anything? Was there any real consequence to the fact that we had four or five days to do this process? I don't believe that the defendants had ever seen the Jenks material since the trial, and the protective order remained in place until sometime in 2013, I believe, or 2012, so they never had the opportunity. Is there anything else? No. Okay. We'll hear from the government on this issue. Thank you. Ms. Bates? May it please the Court, good morning. Lauren Bates on behalf of the United States. Here, the protective order that was in place in this trial should be reviewed for plain error here, given the fact that appellants did not object to the protective order at the time it was entered. In fact, I think there's an argument that... You don't know what day the protective order was entered. You say in your brief you don't know what day it was entered, and there's nothing in the record about when it was entered. I can't find it. I can't find it on the documents. I can't find it in the opinions. I agree that the record as we have it now does not provide clarity on that point, but the record is also clear that there is no objection that appellants can point to that the procedures in place in this trial were that to the extent that there was an off-the-record conversation or something that occurred, appellants were fully aware of, as this makes sense. It's a bit of a bridge to ask us to hold that defendants are to be put to a higher burden, and it was very difficult to surmount burden because they didn't put their objection on record, when at the same time neither the government nor the district court bothered to put the order on record. Does that seem at all fair to you? I think that is what 52 and the plain error standard contemplates, which is that it is a burden that is placed on the defendant or defense counsel to preserve an objection. Well, when there's a ruling on the record, but if there's a secret ruling that no one actually knows about, I'm not sure, do you have a plain error case that was applied to a secret ruling that wasn't in the record and the government didn't bother to put in the record either? I don't have a case that specifically contemplates that. What I'm asking you then is should plain error be applied in a setting like this? That seems very unfair. Yes, I believe that the plain error standard still could be applied to the extent that there is some... Does it make a difference to your case if we don't apply it? Here the outcome, no, to the extent that the court were to review this as a preserved issue for abuse of discretion. Again, I think that there is no abuse of discretion here given the terms of this protective order, which was a limited deprivation of any ability to review this material. It was solely in order that appellants could not review this material on their own. They were entitled to full access and use of the material with their counsel or with the investigator. There was no material, unlike the constitutional cases that appellants have cited, that they were prohibited from seeing. This wasn't an instance where there was a courtroom closure or some other infringement on a constitutional right. The record, again, as the court has recognized, the trial judge invited appellants and their counsel to inform him if there was a time where they felt that they were not able to effectively make use of the Jank's disclosures and made clear he was not going to let them be sandbagged and that they may get their day or two of break if they needed it. There is no instance in which appellants requested additional time or informed the court that they were not able to make use of the Jank's material. Do you agree that to the extent that there's a constitutional objection before us, not a Jank's statutory objection, that the district court was obliged to undertake a balancing of the interests and needs of the defendants and obviously the security needs, the balancing required by the Constitution? No. No balancing is required? I don't agree that the district court was required to undertake a specific balancing, especially here where... I guess I want to clarify, before you go on, just to clarify. I asked, does the court have to undertake a balancing, and you said they were not required to take a specific balancing. Yes, I think that to the extent that a court is, that there would be a balancing of these rights, but appellants are asking this court to require that the district court put its thought process in a certain manner on the record and express that the court has reviewed or contemplated less restrictive means. I don't believe that even if there was a constitutional right that there is, case law that appellants have provided to this court that would require in this context those very specific findings to be made. I guess I'm trying to figure out how one applies, I assume if you're agreeing that it's abuse of discretion, if your second position, your first complaint error is abuse of discretion, how one applies that when there's absolutely no record of the exercise of discretion before it. I think that there is a record that this court can review, because the government repeatedly provided the court with its position and the information about the government's witness security concerns. The trial court recognized those and, in fact, referenced them subsequent to the time where the process was put in place. I guess when I was looking at the record, it was pretty hard to discern, because the district court's answer was for the reasons previously articulated, which, of course, we don't have. And to the extent those reasons were witness identity, that doesn't apply at this stage of the proceeding. The witness identity is out there, and there was no gag order on these folks when they got back to the prison. And if it was this lady of Silva letter, it seems odd that on this issue, the government talks about it as a threat to silence witnesses, but when it comes to recusal, it was a harmless request for which doctor. It can't be both. So what exactly was the security concern that the district court articulated? Where did the district court articulate that? First, the district court, in addition to saying for the reasons previously articulated at that same hearing, referenced that he didn't think that it was appropriate to change or remove the protective order under the circumstances. I think that's fairly read as the circumstances that the government had just set forth on the record, which were the witness security concerns. What do you mean by witness security? I'm really struggling with it. The witness identity is already out there. That's true, but as the government at that hearing said, for the information to be back at the D.C. jail, floating around, free reign from inmate to inmate, is a disaster. I know you say it's a disaster, but where, what, so why? I mean, there's never any explanation as to why that was a disaster, why this information, witness identity is already out there. What they're going to testify to is going to be a matter of public argument. Who said what? There are no pseudonyms used here, as far as I know. So why would it be a disaster? So this is first being, the Jenks disclosures were given a week in advance in this case, and although witness names may have been out there, the Jenks information would include much more than just the name. It would be physical evidence, hard proof, that could be circulated at the D.C. jail that would demonstrate that certain witnesses were cooperating with the government, were testifying against fellow gang members. Wouldn't that be evidence from so-and-so's testifying for the government? Wouldn't that already be a matter of public record? You may very well have these concerns. I just didn't see them spelled out in the record, and so it's hard to figure out how to apply abuse of discretion review. I didn't know who was going to say what. And the next week it's going to be a matter of public record who said what. Well, it will be a matter of public record, but I think that this court can recognize that there is a difference as the government referenced it with the material itself floating around the D.C. jail. And the trial judge, in fact, the subsequent Rule 10 proceedings, in connection with the violation of the terms of the protective order that came up in November, explicitly made clear that he was concerned about efforts to duplicate the Jenks material and distribute it within the jail. That is fairly read to be because having the hard proof, as we all know here, may be viewed differently than the hard evidence. Having that hard proof floating around the jail was a concern that the government had and one that the trial court itself expressly had. I don't know what you mean, why. You guys are much more expert in this than I am, but what hard proof was in the Jenks Act material and what danger was it going to create? I think there's a difference between knowing that at the beginning of a trial the government announces that the following individuals you may hear from or about the following individuals and provides a list of names, with having Jenks material that for many of these individuals included extensive grand jury transcripts that detailed the extent to which they were cooperating with the government, testifying about what fellow MS-13 members had done, which is, as the record demonstrates, was in violation of one of the core principles of the gang in this case. The Jenks material also, in many cases, provides much more than just a name. It provides background information about the witness, about their upbringing, their family, where they live. That material provides witness security concerns that go beyond simply knowing that at the beginning of a trial the government has stated that you may hear from or about a list of individuals. So what do I do about the fact that the explanation you give is nowhere in the record? I think that there's allusion to maybe at some point something was said off the record, but none of that is in the record that I saw. What is in the record is that the government had concerns about the material, itself floating around in the jail. The record demonstrates what the volume of the Jenks material would be and the extensive transcripts that were provided, and that the court was clearly itself concerned about efforts to duplicate and distribute the Jenks material in the jail, and that that was one of the reasons for the protective order in this case, and that to the extent the court is looking for the justifications, I think the balancing that would have to be undertaken is also a recognition of what the infringement or intrusion was here, and I think there was very little, if any, infringement that this court would have to balance the government and the court's adopted security concerns against, which was the defendants themselves had complete access to this material, even though they were not permitted to have it alone at the D.C. jail. They received the material a week in advance, which is significantly more than what is contemplated and required by the Jenks Act, and so there is no indication here that they have identified ever at trial or on appeal, now that they've had two years with the protective order listed, a single use that they would have made of this material if they had had unfettered access throughout the course of the trial. Thank you. Mr. Becker, I think you used up your time, but you can take one minute. Thank you, Judge Tatel. Just a couple of points. Reinhart and Cipollone neither would have prevented the parties from seeing the discovery. Reinhart established the procedure for issuing an order. Cipollone says that the proponent of the order has an ongoing requirement to demonstrate good cause as to every document, and the good cause standard is actually a balancing test. So even if you go under abusive discretion, that still requires a balancing of the parties' interests. We are not arguing for unfettered access. We are arguing that the judge should have put this stuff in the library under the supervision of a jail librarian so that these people could see it without having the ability. But I don't see that request ever having been made in the record. You make it in your briefs, but there's nowhere in the record where that was requested. That is correct, Your Honor, but again, that's part of the balancing test that Reinhart and by extension through Waller v. Georgia applies to the Sixth Amendment, that the judge has to balance the interests. He has to find the least restrictive alternative, which would have been in this case, it's a requirement on the judge in issuing the protective order. Okay. There are no further questions. Thank you. Okay. So next issue, recusal. Right? Mr. Martin. Right? Good morning. Mr. Martin. Good morning, Mr. Martin, on behalf of Jose Gutierrez. Just a little background. Jose Gutierrez was a little over 18 at the time of Edwin Ventura's murder, and he received a sentence of life plus 125 years, and I'm sure you're well aware of that. Moving to the trial itself, there came a time when it became known to everyone that there was what was perceived as a threat letter by the United States Marshals Service that brought it to the attention of the judge, and it was eventually brought to the attention of all counsel as well. Now, it's not clear whether or not this was a request from some witch doctor or a request for a hit, but I think what we need to do is we need to look at what 455A requires, and 455A has as a guidepost the language that how would a reasonably informed observer view the proceedings that are being held by a judge who might have been threatened. And I submit to the court that there are two reasonably informed observers sitting here right now, and that's the two prostitutes. They knew the case better than anyone else, and both of them thought, and I submit that they're reasonable people. I know one of them is a social worker. I think you need to make your argument in terms of abuse of discretion. Do you agree that's the standard here? No, I don't necessarily agree that that's the standard. I know that there are quite a few cases that think that, but I'm inclined to think that it's a Sixth Amendment violation, Your Honor, and therefore there should be a de novo review because there's a mixture here of fact and law. Do you have any case that says that? No, I don't. I don't have a specific case that calls for that, but I think because it's a constitutional question that that's the appropriate standard, at the very least. Did you rephrase that as a constitutional issue? I don't specifically remember that I raised it by reference to a case, and so I don't want to misspeak that. Did you mention the Constitution in your rebuttal argument? I don't want to misspeak that. Well, why don't we assume for purposes of argument that it's abuse of discretion? Well, Your Honor, I think if we look at the language of 455A, it says that any justice or judge or magistrate judge of the United States shall disqualify his or herself in a proceeding where his impartiality might reasonably be questioned. I think in a case where a judge is the subject of a potential threat letter and his name is at the top of the list of those people who needed to be silenced, I think if you look at the Nettles case, for example, that's a good example of what the judge should have done. Well, Nettles is a very different case. That was a threat to the very courthouse that a judge was sitting in. Here you have a situation where the judge didn't view it as a threat, the marshals didn't view it as a threat, the recipient of the letter didn't even view it as a threat. Sure, you could argue it the other way, but if it's abuse of discretion standard, how do you make the argument that this was an abuse of discretion? Well, let's look at Nettles, because with all due respect, Your Honor, I'm not sure I agree with you. In the Nettles case, the judge, she did not think that the threat that was made to blow up the building was one that should have resulted in her recusing herself. But the interesting thing about that was the Court of Appeals thought that not only should she have recused herself, but all the judges in the courthouse should have done so. So I think it goes beyond what the judge his or herself thinks. It goes to what the reasonably informed observer would think. And again, the prosecutors thought that it was a threat letter, and throughout the trial, they made reference to this particular letter being a threat. And so I would submit to the Court that it's not so much what the judge thought, it's what the reasonably informed observer would have thought. Isn't there a problem if we hold that any threat letter to a judge necessitates, as a matter of law, a recusal? I mean, every defendant will be able to pick and choose their judge then by issuing threat letters, or having threat letters issued. No, I'm not asking for that, Your Honor. I think what these cases reveal is that the circumstances are fact specific. And again, going to the reasonably informed observer guidepost, and knowing again that we have people who knew much about this case who thought it was a threat letter, that's how you determine this particular case. I'm not asking that you... And what about this threat letter makes it different from general? All the other types of threat letters that judges see. Well, I think what makes this case different is the nature of the crimes that were committed by these men. They were members of Maricel LaCruce, and I think that there would be consensus here, it would be unanimous that Maricel LaCruce is one of the most violent gangs ever to come before us or anywhere else. In fact, in the month of August alone in El Salvador, they had 904 murders that were gang related. That's in one month. So when you get a letter that specifically lists people that need to be silenced, and you have the government initially seeking the death penalty in this case, the case started out with the death penalty protocol, I think that the facts suggest that the judge did take this matter quite seriously, and I think his ruling with respect to the protective order lends credence to that. Yeah, but you all didn't... the motion to recuse was not renewed in the trial or post-trial, and so I'm not... can we even consider that? Mayor Culpa, yes. I should have renewed it. I didn't. Looking back on it, though, I don't think that that makes much of a difference. I think the standard is, again, 455A, and whether or not this was a case where a reasonably informed observer would say that notwithstanding whether or not the judge thought that he was threatened, he should have recused himself. So even if I didn't renew it, Your Honor, which I... maybe there will be a different forum at a different time that will address that issue, but I don't think that that should be one that decides this case one way or another. Okay. Ms. Bates? The trial judge here did not abuse his discretion in denying the motion to recuse. The record makes clear that the judge thoughtfully considered this issue, had received information and input from the U.S. Marshals Service about their investigation into this letter, and that he concluded that he did not view the letter as a threat. I think that is not just evidenced by his statement at the time that he denied the motion to recuse, but also by the fact that he declined any additional security for himself, his family, or the trial itself in this case. This is not a subjective belief test, so how does that factor in? It's an objective test, right? It is. It's an objective test, but it's objective as to what an informed observer would believe, and I think that part of what goes to whether an informed observer would believe that the judge's partiality was at play here is whether the judge himself expresses that he... If the judge were particularly cowardly, easily frightened, and had reacted with great fear and had asked for protection for himself and his family, the exact same letter, everything's the same except the judge's reaction is different. Different outcome? I don't know that it would be a different outcome, but I think that that is a fact that would not as strongly support a judge's decision not to recuse himself, because if the judge evidenced that he or she was so concerned about this, that that would give, again, an observer who's informed of that fact perhaps one additional reason that they may have a question there about whether the judge could remain partial, but that's not what happened here. In fact, I think the judge's view of this is confirmed by when the government sought to introduce the letter at trial. Again, he denied that request and made clear that he didn't think that this letter really had much probative weight to it because it was not clear on its face. It was stale. Nothing ever came of this. What's your response to the appellant's beginning remarks, which is that if the standard is what a reasonable, informed observer would think, well, prosecutors are reasonable, and they're certainly informed observers, and they thought it was a threat. So why wouldn't a reasonable, informed observer, why shouldn't he say that a reasonable, informed observer would consider this letter to be a threat, and if so, does that change the announcement? I think first, recognizing that the standard here is to review for abuse of discretion. I don't think that that fact that the prosecutors even if viewed as a reasonable, informed observer would overweigh all of the considerations that the court undertook in denying the motion to recuse. But the prosecutors, I don't know that you would say that in this context where they are an advocate before the court in the case itself, that they are the reasonable, objective, informed observer that you would look to. Would you give special weight to the marshal's view? Excuse me? Would you give special weight to the marshal's view about this? Sorry. I don't know that we need to give special weight, but I think the marshals obviously have an obligation to ensure that they are the ones tasked with protecting the judiciary and the courthouse, and I think that it is of significance then that the marshals, based on their investigation with their underlying obligations known, did not view this as a threat. Although the court said to the marshals that it would allow them to undertake security outside the courtroom, there's no suggestion that the marshals believed that there was some great additional security that was required here. They allowed the judge to decline security for himself. The trial was conducted in a typical courtroom, not a secure courtroom. So I think that all of those factors, again, go to show that it was not an abuse of discretion for the judge to deny the motion to recuse here, given the nature of the letter and the investigation that unfolded. So suppose the letter, and I know these aren't your facts, suppose the letter said, you know, so-and-so, I want you to kill the judge in this case, because that will make things better for me. That's what the letter said. Judge Gitsit says, you know, I'm not going to, you know, I'm going to stay on this case. And we're reviewing that, and it's a clear threat to the judge. How do we evaluate whether that's an abuse of discretion? What do we do with that? There's case law, not from this jurisdiction, but others, where there are clear threats made to a judge, and on appeal, the judge's decision not to recuse himself under those circumstances is upheld. I think one of the concerns that underlies that is that you don't want to incentivize the ability for a litigant to forum shop by forcing a court to recuse itself in the face of threats. I think that you would look, again, to the, here you could look still to the fact that this was, you know, a letter that was written over a year earlier, that nothing had ever come from this. Whether or not the court, in the face of, you know, even something that may be a clear threat, felt it necessary to request security or handle the proceedings differently in some manner that would evidence that they, you know, had taken the threat to heart in such a manner that it would influence their partiality. Look at the purposes underlying the threat. That's one of the factors that courts have pointed to, whether it's obviously a forum shopping attempt. So I don't think that even a clear threat, which we don't have here, would have necessitated recusal such that it would have been an abuse of discretion to deny the motion. Do you have a position on, since the motion wasn't renewed, it was only pretrial, on whether we can even look at judges' references to the letter during the trial as part of this analysis? Is that something that should, if they thought something happened during trial, it was evidence of refusal, they should have renewed it, or can they just say that's evidence that we were right the first time? I'm just not sure whether we sort of have to stop at the pretrial when the motion was filed and not look at any facts that happened after that or not. Well, I don't think that this court needs to look beyond the record that was established at the time that the motion was denied because the court, you know, made a record of the fact that he didn't view it as a threat, that he relied on the marshal's investigation, declined additional security. The references that the court subsequently made at the time of denying the government's request to introduce the letter, I think, if anything, they go to demonstrate that those statements were credible, that this court should not question whether the judge actually meant what he was saying at that time because he carried through the trial a belief that the letter was not a clear threat and he didn't view it as having some great probative weight. I don't have a case that specifically looks to subsequent statements. And so to the extent that this court did not feel that that was appropriate, I don't think you need to look to those statements because the record at the time is clear. But if anything, those statements would provide additional comfort that the trial judge really here was not in a position where someone, a reasonable informed observer, would question that he could remain impartial. Anything else? Okay. Did Mr. Martin have any more time? Oh, you can take a whole minute if you like. Quickly, Your Honor. I think Madam Counsel touched upon something and that was the Holland case where it talked about jury shopping and manipulation. That certainly wasn't the case here. There were three factors that the Holland court laid out. One was capacity. One was what? Capacity. Were they able to follow through on the threat? And I think that MS-13, based on the arguments that were given by the government at trial, they certainly had the capacity to carry out a threat to silence anyone, be that by whatever means they had available. The demeanor, was it said in a joking way? There was no joke about this letter and there's no joking amongst these people in MS-13. And the perceived purpose. It wasn't to manipulate the system or to shop for a different judge. That's not why the letter was written. And this case is very different from those other cases we've seen where people have tried to manipulate the system, like the Pulido case, where you had a, I'm sorry, not Pulido, Bastiano, where he was talking to his wife and he told his wife he was going to put out a hit list because he was going to try to get a different judge, but he didn't intend to go forward with that. There were cases that showed manipulation. This isn't that case. So I just wanted to address that because Madam Counsel raised it and I would invite the court to look at those cases. Thank you. Next issue, please. Thank you, Judge Cagle. Robert Becker again on behalf of Mr. Sordo. I'd like to first talk about the absence of an appellate record on this issue. Judges' decisions about which instructions to give and the wording of those instructions are among the most brutal grounds for appellate litigation in criminal cases. An example of the problem is a case from the circuit, U.S. v. Mellos from 1993 to 1984, 5th, 2nd, 1293. The judge, in the reasonable doubt instruction, used strong belief in place of firmly convinced or abiding conviction about whether the person committed the act, and this court reversed and reversed several other cases in which that instruction was given. That's not this case. But what happened in this case was a two-and-a-half-hour off-the-record discussion of jury instruction. The government says, well, nobody ever pointed to any problems with that discussion, but let me explain why it was a problem. They went through 200 or so pages of jury instructions. A lawyer might have said, I would prefer that you use this phrase instead of that phrase in the instruction without having any general objection to the instruction. When a judge came back on the record, he wouldn't have noted that there was this discussion about using a different phrase. But the court said what it did, and the parties were asked to recreate what happened, and they said that that's not the nature of the discussion. They said that the nature of the discussion was to see on which instructions do we all agree and which ones is there some disagreement, and then we would discuss those disagreements on the record. So the example you just gave us wouldn't have happened if things were done the way that the judge and the lawyer said that they were done, right? I disagree with that, Judge Wilkins, because, as I said, let's say we're talking about any given instruction, and counsel says based on this case, I would say this this way instead of that way. It doesn't have a general objection to the instruction itself. Well, if you've got no legal objection to the instruction itself, then by definition it's going to be harmless. I understand, but from the standpoint of an appeal, that discussion is essential to understanding what happened during the discussion of jury instructions. We do not have that record. We don't know what was said there, even in passing. And so even if I were to raise an issue and find out that somebody said, please, I want you to use this instruction and was denied, we'd be in plain error land at best, even if I could reconstruct that now. If anything was denied, I mean, the difficulty, as I see it, is that this conference was about what's the stuff everyone agrees on? So nothing's getting denied. What's the stuff everyone agrees on? And then we'll go out for anything there's disagreement, then we do that in open court. I have to think the stuff that everyone agrees on is not going to involve your scenario and in any event is going to be a pure question of law for which presence is not uniformly required. And I would suggest to you without a record we don't know that truly because we only know what would have risen to the level of an objection. Were you there? I was not. I mean, your client's lawyer was there. Yes, she was. And two years after the trial, when I filed a motion to reconstruct the record, nobody could remember or had any notes about that conference. We did try to reconstruct the record, and there was nothing in anybody's memory or files. What case says the defendant's right to be present even applies to this type of jury instruction, essentially a pre-charge conference just to sort out the stuff no one objects to? Do you have any case with that? A lot of cases say the jury instruction generally they don't even have to be there. That brings us to the second part of this issue, which is the defendant's rights to be there. In Rogers, the court talked about having a procedure for re-instructing. And after Rogers, we cited the Rhodes case from the Fourth Circuit, which said that Rogers overruled its precedent that relied on Spencer for the proposition that because the defendant couldn't provide any useful information during that conference, he didn't have a right to be there. The government cited U.S.B. Rubin from the Second Circuit. So those are the two cases that are most clearly addressing this issue post-Rogers. Several other circuits have come out, and most of these cases involve the scenario of re-instruction. A jury sends out a note, they get re-instructed. There are a bunch of cases in which the judge, without consulting counsel, re-instructed the jury. And the courts have generally held that the defendant, saying this broadly, has a right to be present, that that procedure has to happen in open court. The defendant has a right to be present, and counsel has a right to be heard under the Fifth Amendment and Rule 43. They do not distinguish the piece about right to be present during the re-instruction, right to be present during the discussion about what would be said to the jury. But at least some of those cases, because that wasn't the issue, but at least some of those cases, for one, U.S.B. Burns, 683, Fed Second, 1056 in the Seventh Circuit, says- Is that in your brief? It is not. I found this yesterday, quite frankly, Judge. Did you have a government in advance who were going to cite these cases? I did not, because I just found it. In a footnote, it says, the absence of a clear waiver of the defendant's right to be present. So the defendant has to personally waive the right to be present for that kind of proceeding. Two other circuits- There's also some authority from the Seventh Circuit that says that defendants don't have to be at pre-charge conferences. So if you're going to go outside to the Seventh Circuit, be aware that there's some law against you on this. I understand, Judge Wilkins, but it's hard to rationalize, I think, the defendant's right to be present during this process of re-instruction and say, well, he's got a right to be there without distinguishing whether we're going to have this discussion first and then we're going to re-instruct, and saying, well, in the pre-charge conference, there's no right. Even if you were to balance these interests, the judge said he did this in chambers because it would waste people's time. And the absence of a record is not explained by wasting people's time, and I don't understand whose time was being wasted by holding this discussion in open court, or particularly on holding it off the record. It's just not an acceptable answer, I don't think, to say, we're going to hold this in chambers, off the record, and then if anything happens that goes wrong, then the appellant is in a terrible position. Well, I had the same question, but I looked back at the record and I saw that what happened is that each of the three defendants submitted their own sets of jury instructions, you know, 50 pages or more long, and the government had their own, their set of jury instructions. So the judge is faced with four sets of jury instructions where nobody had gone and kind of collated these and said, okay, you know, we can all live with this one or that one or the other one, and it appears that he did this off the record chambers conference to at least do that. Now, if I had been the trial judge, I wouldn't have done it that way, because I would have made the party sit down and figure out what they objected to and follow one document. But, you know, I'm a commercial. Judge Wilkins, my sense from the transcript or from the proceeding to reconstruct the record was that, in fact, the judge had boiled down these three sets or four sets of instructions into a set that he was considering giving before that conference happened. I may be wrong about that, but that was my sense from reading between the trial transcripts. Has he had to confirm that with the lawyers as far as his view that everybody seems to agree on this one or that one or the other one? Am I right about that? And I believe ultimately that is what happened, but that doesn't mean that the discussion was solely limited to up or down on this instruction over that period of time, and we can't know that. But does anybody say that it was more than just up or down on any particular instruction? That's, I think, contemporaneously, isn't there something in the record where the trial judge says that that's what happened or that's what he was going to do? There were three paragraphs in the transcript of what was his recounting of that two and a half hours. That was the sum total of the summary of two and a half hours of discussion was three or four paragraphs in the transcript. And it was, I guess my point is, has anybody said, either from interpreting what the trial court said or what any of the lawyers said, that what transpired was anything other than just seeing whether there was consensus on a particular instruction or not? That is what the judge stated in the hearing in 2013 in February, and everybody said, we don't have any notes and we have no recollection that's different from yours. But that was two years after the trial. That was the best we could do in the proceeding under Rule 10. And nobody placed an objection, certainly, on the record after the instruction, and there was discussion of jury instructions on the record after that. I'm sorry, after that changes. There was of the instructions that for which there was a matter of debate. The recall instruction, the charge instructions, the things like that. So why should we assume that there must have been debate about other instructions off the record? I think that you should assume that the absence of a record creates an issue about which there is doubt. And in the absence of a finding that the error did not cause a problem, I think the presumption should be that we have been harmed, at least in their appellate rights. Let me ask it this way. There's nothing in the Federal Rules of Criminal Proceedings that says that every minute of every criminal proceeding has to be done on the record, right? That's correct. And there's no federal statute that says that every minute of every criminal proceeding has to be conducted on the record, right? That's correct. So then the follow from that is that trial judges have some discretion to do some things off the record in the context of a criminal proceeding, right? I guess, yes, as a general matter, that is true. So how are we to, you know, if we've got to set rules and guidelines, what are you saying is the rule or guideline for when a judge can or cannot exercise his or her discretion to conduct some part of the proceeding that they believe is a housekeeping matter off the record? I guess my response is that jury instructions, discussions of jury instructions are never merely a housekeeping issue, and this court should at least guide judges by saying if we wouldn't be here in this case if there was a record of that proceeding, and therefore judges should discuss the jury instructions on the record. I have been practicing before this court since 1992. This is the first case I have had where a judge went off the record for a lengthy period of time to discuss jury instruction. Thank you. Okay. Ms. Bates? Thank you. Welcome again. Here, there's really no error, let alone plain error, in the manner in which this pre-charge conference was conducted. The record makes clear, both the record immediately before and after the conference itself and the subsequent rules and proceedings, that the purpose of the pre-charge conference was simply to go through the proposed instructions that each party had proposed to set, the court, whether it had collated those or not at that point, and determine, and this is the quote from the judge immediately after the instruction, to determine which of any of them required oral argument because of differences of opinion. There was then over 100 pages of transcripts where the parties discussed those differences of opinions and objections to the form of many of the instructions, and I think it's fair to say most, if not all, of the substantive charge-based instructions in this case. There is simply no error in having that pre-charge conference off the record. Perhaps would it have been better or make a simpler record and have eliminated the need for this discussion now on appeal had it been done on the record? Perhaps. But there was no legal violation of principle of law that is implicated by the fact that that initial pre-charge conference happened off the record, especially where there was the subsequent discussion that appellants themselves were present at and had the opportunity to participate in, something that I think is not even on its face required by Rule 43 or even the constitutional principles. But that happened. So there simply is no basis to find error in the manner that this conference occurred. Unless there are any further questions. I see one question about the sufficiency of the evidence on the VICAR issue would now be the best time to do that. We warned you we might want to do things. It's just a legal one. So I know what I would call the VICAR motives of here the advancement of the gang enterprise or protection of status within the gang enterprise. It doesn't have to be the sole motivation, but it has to be causal. So if it's not sole motive, does it have to be primary motive, substantial motive, any motive, however small? I don't know how to review sufficiency without knowing what that legal test is. The jury instruction was utterly vague. And I just don't know what the legal rule is and haven't been able to find out. I will say that I don't know, based on the brief, I'm not sure that the question was articulated in that degree of precision. So I haven't conducted a thorough search out of the jurisdiction in all cases on that question. But I don't think that there's any case that I've seen or that appellants have cited that suggests that it has to be more than a purpose for which the act was undertaken. So either the purpose of maintaining or increasing position in the enterprise must be present. And I think here the evidence is clear. It was something they were thinking about, but they would have killed her anyhow if she didn't want to be booted out of their apartment. I don't know how to review sufficiency without knowing the legal test. But the government has a position that if it's a factor however small, that counts. Or maybe it doesn't have to be predominant, but substantial. And if you don't know now, I understand you all didn't plan to argue this, but it would be very helpful to me to at least have maybe a short letter or something. I would say that standing here today, I think that the government's position and I will... Is this a plain error issue? Is this a plain error issue? No, I thought sufficiency evidence. Oh, sorry. No, I don't believe that... This issue is not plain error. I don't believe that we have asked the court to review this on plain error review. Although I will say that that specific question was not teed up either at the trial level. The degree to which it must be a purpose was not one that I think was raised in the briefing. I don't know if there's enough. If I don't know what the test is, I don't know if there's enough. I would say that standing here today, I believe that it is the government's position, and I have no reason to believe that there's any case law that suggests the contrary, that it must just be a purpose, that there must be sufficient evidence that it was a purpose for which the act was undertaken. May it be one of two, the only one of many, that as long as there is sufficient evidence that it was, you know, viewed in the light most favorable to the government, that it was a purpose, that that is sufficient. If it would have happened otherwise, your position would still be that counts. Yes, well, yeah, that too. But they would do it anyhow. Is that what you mean by a purpose? Yes. Or it had to contribute, actually contribute in some causal way. And again, I said that. Sorry, I'm sorry. I have not looked into this. But I think unless, you know, and I will inform the court if we believe that our position should be different. But I think, yes, it does not have to be causal in the sense that it would not have happened but for that vicar purpose in this case. But I think here the evidence, again, it must be viewed in the light most favorable to the government. And the reasons for which we have set forth in the brief that there was evidence that Cordova and Gutierrez undertook the actions, I think there is sufficient evidence to find that it was not just a very minimal purpose but a guiding purpose of undertaking the actions. Was there also evidence, something I was curious about, I'm sorry, were you the trial attorney too? I was not. Okay. Was there evidence also that it would be disruptive to gang operations just to have to relocate? I didn't sort of see that argument. But one can imagine it seemed to be sort of their, at least one of their headquarters. And if you have to sort of relocate, that's going to be a problem too. I don't, I agree that there wasn't, you know, in this form of closing arguments that specific argument, again, because this was not one of the primary battlegrounds at trial. But, yes, I think that based on the record, this court could look to the fact that this was a location where these two individuals, and this is one of the arguments made in the government's brief, were storing weapons, that this was, you know, a place where they were kind of residing and had their belongings as they related to use in connection with the gang operations, and that it would have been not only, you know, a potential threat as the victim called the police to assist with removing them from the house, but just kicked them out on their own, and that they would have had to find a new location to store those weapons. Was there evidence of other stuff besides weapons? I mean, weapons is obviously relevant with drugs or money or stuff like that. It was also in the same location. I don't have specific facts to point to. I think that the weapons were the key piece there that was directly tied not only to the gang, but to the offenses that were a subject of the trial. Thank you. Finished? Thank you. Okay. Did Mr. Becker have any more thoughts? You can take a minute if you'd like it. Thank you, Judge Cato. I would just like to make one point. On the appellate issue, we have this case law that says this is a discussion, the jury discussion in chambers is a matter of law for which the defendant has no right to be there because he has no reason willing for it. But this discussion of legal issues, then are we saying that that's not important enough to make sure that that is on the record so that it can be reviewed? Okay. And I think that's the dichotomy we come to in this case. All right. Thank you. Do you want to say anything about the question Judge Millett asked? That question does not address my client. Okay, fine. We'll just not help you with that. Okay, fine. Great. Okay. Testimony in Spanish. Good morning. I'm Mary Davis, and I represent Mr. Cordova. And yes, the issue I'd like to address is whether the court abused its discretion when it allowed an English-speaking witness to testify in Spanish through an interpreter. I think it's important to note that the witness that we're speaking of, Mr. Flores, was a key significant government witness who testified extensively regarding the shooting in Virginia, the shooting of his mother, Ms. Flores. He also testified that Mr. Cordova was wanted for murder in El Salvador, and he testified to much, much more. His testimony was extensive. He also testified extensively regarding the Ventura homicide. So, therefore, his testimony was very significant. It's credibility very important, I believe. 28 U.S.C. 1827d requires that the district court determine whether a witness speaks only or primarily a language other than English. In this case, the court only decided that Spanish was Mr. Flores' primary language. The statute goes on to say that the court must determine whether, if the language is primarily something other than English, the court has to determine whether that inhibits the witness's comprehension of questions and presentation of such testimony. In this case, the court made no determination as far as Mr. Flores' ability to speak English. But the defendant's counsel never asked for that to be done prior to him beginning the direct examination, right? That is correct. There was no objection to him testifying in Spanish on the record? That's correct. So why wouldn't it just be reasonable for the court to say you can't have him testify in Spanish on direct and in English because then the jury is going to see him kind of differently on this cross-examination, and that's not fair to the government. If you wanted him to testify in English, you should have said something before he commits a direct. Well, I think it's, first off, I think it's very obvious in any of these cases that government witnesses are thoroughly prepared by the government. And so I believe all questions asked of Mr. Flores by the government had already been anticipated. Well, hadn't two? I mean, it's even worse than Judge Wilkins was suggesting. My recollection is at least one, if not two, cross-examinations had already occurred in Spanish as well. That's correct. So direct and two-thirds of the cross-examination had been in Spanish. That's correct. But I think it's also important for the jury to see that, number one, this witness was able to speak English, and, number two, that it would allow the jury to see the inflections in his voice, notice if there's any hesitation. If this witness was able to understand English, which we believe he was based on his background, if he was able to understand English, he was hearing the questions in English, taking time to think through his answers and then giving his answers. If he were made to testify in English, he wouldn't have that hesitation. And if there was a hesitation, that's something that the jury should have been allowed to see. But the judge expressly found that not only that Spanish was his original language, but that he would have difficulty in English, that there were aspects of the testimony that would be tricky for him. The judge said that he understood that Mr. Flores, his first language was Spanish, and he said that he perhaps, he probably does understand. He can get by speaking English on the street. Right. However, I'm sorry. No, go ahead. But I don't think there was any question asked of this witness that was difficult. And also the attorney suggested, well, if there is difficulty in understanding, the interpreter is there to help. So I think when a witness is able to speak English, the witness should be at the court at the very least to hold a hearing to determine the extent that he can speak English and understand the questions and answer the questions. Just a procedural question. If a witness isn't going to test in, excuse me, testify in English, do the rules require advance notice from whoever is presenting that witness, or do you just not know until the moment the person takes the stand? Do you know in advance? I don't know. I don't do a lot of trial work. I don't know the answer to that. I would expect that they would know shortly in advance that the person will be testifying in Spanish. You were the trial lawyer here. Excuse me? You were not trial lawyer here. No, I was not, no. I think the government will know the answer. Yeah, but I would think because there's interpreters there ready to translate, that the parties would know at that point at least that the person will be testifying in Spanish. Right. And, again, I think the statute requires more than what the judge did in this case. The judge held no independent hearing. It was requested that he speak in English, and the judge only made, as far as the statute goes, there was two required findings. He only made the first finding, and he didn't even find that all the way. So I think that was a violation of the statute. And I think there was a – Do you know if you're a Cordova's attorney, do you have a view on the psych or the motive issue that I was asking the government about? I believe that was actually briefed by – It was your client, I thought, that raised this. Yeah. It was both clients. I believe that was briefed by other counsel. You don't have any view on that? I do not. Okay. So if there are no further questions. Thank you. All right. So the record does not demonstrate that there was any error, let alone abuse of discretion, in permitting the witness to continue his testimony in Spanish. As appellant concedes, the error was evidence in the trial court made a finding that Spanish was his primary language.  The witness made clear that he preferred to speak in Spanish because he could understand exactly when someone spoke in Spanish, and that there were words in English that he didn't quite understand. And that's reflected in the trial court's discussion after the – Some words, though, is not a finding that he was not, you know, functionally fluent in Spanish. Did those – Some words. Were there words that he might not – or did not understand? I think it was words that he might not. I think he said there were some words I might not get. Why isn't that exactly the situation when you should go forward in English and then just have an interpreter standing by just in case? Well, I think you have to read that fact in the context that first he was asked what his primary language was, and the answer to that was Spanish, and that he then explained that – I mean, I know a lot of people whose primary language is English and are perfectly fluent in Spanish or in other languages. And if someone was, you know, functionally bilingual, do you think the district court could do this? Put aside the fact that – I know you have a separate argument, but it was raised way too late. So let's just table that for a minute and just ask this pure legal question. If someone is functionally bilingual, can a district court do this? I think in circumstances, yes. I'm sorry? I mean, functionally bilingual still leaves open the possibility that a witness in the court could make a finding that the primary language that the witness used is one or the other, and that even though they may be functionally bilingual, that it would aid in their comprehension and the presentation of their testimony to speak in the language of the two. Is there no confrontation clause balance here? The jury is listening in English, and the defense – again, imagine they made a timely objection here. And the defense says, I want them to see him – I want them to hear his voice, his inflections, not the interpreter's, in the language that the jury itself speaks and understands. And I don't want him to have all this time delay. Okay. This is not – this is – surely you couldn't have a serenade of Bergerac type thing where the witness would be here and listen to someone else's answers for him so that he don't have the body language and inflection issue. I don't believe that that rises to the level of an infringement on a confrontation right. Again, that right is to have the witness present, have the full opportunity to cross-examine the witness to the extent that there is some meaningful inflection. The jury would hear that in the language that the witness was speaking. Defense counsel would have an opportunity through the interpreter to clarify what word or at point, if it wasn't obvious just from the manner, the timing of the phrase that the inflection occurred, that that occurred. If there was a point to be made of the delay beyond what the jury would see itself, the jury would know this witness has – because we are all witnessing in the live courtroom. So the government would have no objection if the defense wanted to do this with one of its witnesses. It's perfectly bilingual. But let's have a buffer between him and the jury. And the government would have no objection to that. It sounds like your position is. I think perfectly bilingual is – there still is more that may be looked at here. And do I think that it would be an abuse of the court's discretion in that situation to permit the witness? No. So the government's position is defense can do this too, in my hypothetical. That if this were a defense witness in this situation and the government were standing here on the other side, I still do not think that it would be an abuse of the trial court's discretion to have permitted the witness, even if it was closer in the nature of bilingual capabilities to testify in the language if the court found that it was their primary language and that the interpreter would aid in the presentation of the testimony. But that, I think, is not a situation we have here. Anything else? Okay, thank you. Thank you. Does Ms. Davis have any more questions? Ms. Davis has a question. Oh, go ahead. Very quickly, I would only reiterate that the judge was required to follow the statute, the applicable statute in this case. He did not do that. He didn't satisfy either prong that should have been answered, and so therefore we request that the convictions be reversed as far as that issue. In regard to your question regarding the sufficiency of evidence, this is quite embarrassing, but no one recalls who actually wrote that issue in the brief. We would submit, however, that there needs to be some significant evidence in order to satisfy the sufficiency, and that in this case it is very clear that, as Your Honor was mentioning earlier, the offense would have happened regardless because they were being forced out of the apartment, and that was not enough to satisfy the requirements of the statute to convict. Well, the instruction that was given, which I think was basically the same language, at least on this part, as what the government requested was that for the Vicar charges, whether it was the Vicar murder or the maiming, was that the murder or the maiming was committed for the purpose of gaining entrance to or maintaining or increasing position in the charged enterprise. So, to me, the key language there is that it was committed for the purpose. For that purpose, and we would submit that there was significant other evidence at trial that that was not the purpose that the claims were committed. So, I think that that's, whether that instruction is right or wrong isn't before us, but that's the instruction that was given at the government's request, at least as I can tell right now. Yes, Your Honor. Any further questions? Okay, thank you. So, Ms. Davis, Mr. Beckler, and Mr. Martin, you were appointed by the court to represent the defendants. You've done a fine job, and we're grateful to you for your assistance. The case is submitted. Thank you.
judges: Tatel, Millett, Wilkins